**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTONIO SAUNDERS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 20-CV-4530** |
| | : | |
| **BB&T BANK,** *et al.*, | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**McHUGH, J.**                                                    **OCTOBER 20, 2020**

Plaintiff Antonio Saunders, an inmate incarcerated at SCI Dallas, filed this civil rights action based on criminal charges that led to his conviction in the Northampton County Court of Common Pleas.  For the following reasons, the Court will dismiss the Complaint pursuant to 28 U.S.C. § 1915A(b)(1), deny Saunders's letter request to consolidate this case with his habeas case, and deny his motion for service by the Marshal.  Saunders will be given leave to file an amended complaint as to limited claims, as discussed further below.

## I.     FACTUAL ALLEGATIONS[1]

Mr. Saunders's Complaint names the following Defendants in their individual and official capacities: (1) "BB&T Bank, Truist Bank" (hereinafter "BB&T");[2] (2) Jamie Adams, identified as a branch manager for the bank;[3] (3) Detective Michael Munch; (4) Nicholas

---

[1] The following facts are taken from the Complaint and from public records, which the Court may consider in evaluating Saunders's claims.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

[2] This Defendant is listed as two Defendants on the docket — BB&T Bank and Truist Bank — but a review of the Complaint reveals that the two names refer to the same entity.

[3] This Defendant is misspelled on the docket as "Jamie Adama."

Englesson, a Magisterial District Judge in Northampton County; (5) John Capobianco, another

Magisterial District Judge in Northampton County; (6) Edward Andres, an Assistant Public

Defender; (7) Michael Light, another Assistant Public Defender; (8) Northampton County; (9)

the City of Easton; (10) John M. Morganelli, the Northampton County District Attorney; (11)

James Augustine, an Assistant District Attorney; (12) Judge Jennifer Sletvold, a Judge of the

Northampton County Court of Common Pleas;[4] (13) Leigh Ann Fisher, the Clerk of Court for

the Criminal Division of the Northampton County Court of Common Pleas; (14) Karen Mengel,

a court reporter at the Northampton County Court of Common Pleas; and (15) and unspecified

John Doe Defendants.[5]  Saunders's Complaint is based on criminal charges filed against him in

the Northampton County Court of Common Pleas, which led to his conviction, and his

dissatisfaction with the manner in which those criminal proceedings unfolded.

>    A.      **Saunders's Criminal Proceeding**

The lengthy public docket for Mr. Saunders's underlying criminal proceeding reflects

that he was arrested on January 28, 2019 by Detective Munch, and charged with identity theft,

forgery, and related crimes.  *See Commonwealth v. Saunders*, CP-48-CR-0000538-2019 (C.P.

Northampton).  The charges were based on an affidavit of probable cause filed by Detective

Munch, which stated:

> On 1/25/19, [Saunders] entered the BB&T Bank at [Route 248 in Lower
> Nazareth, Pennsylvania].  [Saunders] applied for a signature loan in the amount of
> $30,000 using the identifying information of Allen Baynes.  [Saunders] displayed

---

[4] This Defendant is misspelled in the caption as Judge "Sletvoid."

[5] Although an unspecified number of John Doe Defendants are named in the caption of the
Complaint, the Complaint does not raise any allegations against these unnamed individuals.  In
other words, the Complaint fails to discuss how any unnamed Defendants participated in the
claimed violations of Saunders's rights.  As it appears that the John Doe Defendants were merely
included as placeholders without any factual basis, the Court will dismiss any claims against
these unnamed Defendants.

a Pennsylvania ID card and a social security card in the name of Allen Baynes. [Saunders] also provided the bank with a federal income tax return form in the name of Allen Baynes.  [Saunders] also signed the loan application form in the name of Allen Baynes.

Officer Nigro, this department, contacted Allen Baynes who resides in Alabama. Baynes stated he has not been to Pennsylvania and did not apply for a loan, nor did he allow anyone else to apply for a loan in his name.

On 1/28/19, [Saunders] returned to the bank in order to receive his money. At that time, your affiant placed [Saunders] under arrest. [Saunders] was in possession of a Pennsylvania identification card, social security card, and two bank cards, all bearing the name Allen Baynes.  A short time later, [Saunders] identified himself as . . . residing in New York.  [Saunders] was in possession of a temporary NY driver's license in [Saunders's] name. . . .  On the back of the driver's license was a handwritten list of the identifying information of Allen Baynes, including date of birth, email address, and phone number.

*Commonwealth v. Saunders*, No. 2122 EDA 2019, 2020 WL 4252668, at *1 (Pa. Super. Ct. July 24, 2020) (quoting Trial Ct. Op. 10/8/19, at 2) (footnote omitted and alterations in original except for use of Saunders's name in lieu of Appellant).[6]

Magisterial District Judge Englesson was initially assigned to Saunders's case for the preliminary arraignment, which occurred on the date of his arrest.  *See Commonwealth v. Saunders*, MJ-3208-CR-0000051-2019.  The docket reflects that Defendant Andres was appointed as defense counsel, and that Defendant Augustine served as the prosecutor.  *Id.* Magisterial District Judge Capobianco subsequently handled Saunders's case until it was transferred to the Northampton County Court of Common Pleas.  *Id.*

---

[6] This opinion by the Pennsylvania Superior Court resulted from Saunders's appeal of an order disapproving of two private criminal complaints he filed, which related to his underlying criminal proceeding.  The allegations in the criminal complaints underlying Saunders's appeal are similar to the allegations he makes in the instant case, namely, that a BB&T employee and Detective Munch falsely accused him of the charged crimes.  The criminal complaint against Saunders and Munch's supporting affidavit of probable cause can also be found as an attachment to a Petition for a Writ of Habeas Corpus that Saunders filed in this Court.  *See Saunders v. Ransom*, E.D. Pa. Civ. A. No. 20-4432 (ECF No. 1 at 37-38).

The docket from the Northampton County Court of Common Pleas reflects protracted proceedings as a result of numerous motions filed by Saunders.  *See Commonwealth v. Saunders*, CP-48-CR-0000538-2019 (C.P. Northampton).  The docket also reflects that numerous hearings were held, and that Saunders ultimately proceeded pro se before Judge Sletvold.  *Id.*  Relevant here, Judge Sletvold held a suppression hearing, the testimony at which the court summarized as follows:

> Detective Munch testified that an employee of the Lower Nazareth BB&T Bank ("BB&T Bank") had provided Officer Nigro with copies of (1) the loan application that [Saunders] had signed on January 25, 2019 in the name of Allen Baynes, a National Football League referee who lived in Alabama and had no connection to [Saunders]; (2) a Client Information Change Request Form that [Saunders] had signed on January 25, 2019 in the name of Allen Baynes, which listed certain demographic information of Allen Baynes; and (3) a 2017 federal income tax return in the name of Allen Baynes that [Saunders] had presented to the bank on January 25, 2019 to verify his income in support the loan application. The Commonwealth's attorney, James Augustine, Esq., told the [c]ourt that he had provided these documents to [Saunders] in discovery.  [Saunders's] attorney, Matthew Deschler, Esq., acknowledged that he had received the referenced documents in discovery and that he had given the documents to [Saunders].

> Attorney Augustine told the [c]ourt that, in addition, he had provided [Saunders] with (1) the Criminal Complaint; (2) police reports; (3) the name of the BB&T Bank employee [Jaime Adams] who had positively identified [Saunders] to the police; and (4) a still photograph taken by a BB&T Bank camera showing [Saunders] inside the BB&T Bank on January 25, 2019, the day on which Detective Munch said [Saunders] had applied for the loan, and wearing the same coat [Saunders] had been wearing at the time of his subsequent arrest on January 28, 2019.  Attorney Augustine represented to the [c]ourt that the victim, Allen Baynes, would be available to testify at trial.

> Detective Munch testified that on January 28, 2019, when he went to BB&T Bank to arrest [Saunders], the bank loan officer who had received the loan application in the name of Allen Baynes on January 25, 2019 positively identified [Saunders] as the man who had submitted the loan application.  Detective Munch said that when he arrested [Saunders], [Saunders] had in his physical possession a Social Security card and a New York interim driver's license, both in the name of [Saunders].  Detective Munch produced a photocopy of [Saunders's] Social Security card.

Attorney Augustine stated, and Detective Munch confirmed, that a BB&T Bank employee would testify that on January 25, 2019 when [Saunders] applied for the loan, [Saunders] presented the bank with a Pennsylvania driver's license bearing his own picture and the name of Allen Baynes. Detective Munch testified that when he arrested [Saunders], [Saunders] did not have the actual Pennsylvania driver's license in his possession. However, Detective Munch said he knew that the Pennsylvania driver's license existed, because he had searched a database maintained by the Pennsylvania Department of Transportation ("PennDOT") and had discovered a transaction record indicating that, a few days prior to [Saunders's] arrest, [Saunders] had applied for and obtained a Pennsylvania driver's license bearing his own picture and the name of Allen Baynes.

Attorney Augustine acknowledged that the Commonwealth did not have in the courtroom that day the two bank cards bearing the name Allen Baynes that were alleged to have been in [Saunders's] possession at the time of his arrest. However, Attorney Augustine noted that [Saunders's] wallet had been taken from him at the time of his arrest, that the wallet was being stored at the Colonial Regional Police Department, and that the wallet might contain both the Pennsylvania driver's license and the two bank cards. The [c]ourt advised Attorney Augustine that it would give him seven days to check for additional evidence, and if the Commonwealth located any additional items, the [c]ourt would hold an additional hearing to make a record of that production.

*Commonwealth v. Saunders*, 2020 WL 4252668, at *1-*2 (quoting Trial Ct. Op. 10/8/19, at 3-5) (alterations in original except for use of Saunders's name in lieu of Appellant).

Judge Sletvold ultimately denied Saunders's suppression motion. *Id.* at *2 n.3. On June 5, 2019, after a jury trial, Saunders was convicted of identity theft, multiple counts of forgery, and attempted theft by unlawful taking. *Id.*; *see also Commonwealth v. Saunders*, CP-48-CR-0000538-2019, at 5-8 & 40-41. He was sentenced on August 2, 2019 to several terms of imprisonment. *See Commonwealth v. Saunders*, CP-48-CR-0000538-2019, at 5-9 & 53. The docket reflects that Saunders filed numerous post-trial and post-sentence motions and several appeals, and that his direct appeal is pending.

### B.    Saunders's Complaint

Saunders's Complaint in the instant matter is predicated on the alleged illegality of his arrest and prosecution. Saunders's primary assertion is that BB&T branch manager Adams

fabricated the allegation that he applied for a loan under Baynes's name, (*see* ECF No. 1 at 5-6), that Munch's affidavit of probable cause predicated on that allegation is likewise false, and that, as a result, Saunders was falsely arrested, maliciously prosecuted, and unlawfully imprisoned without probable cause.  (*See, e.g.*, *id.* at 3 (claiming that Saunders was subjected "to unlawful commitment under criminal process without a determination of probable cause; thereby subjecting [him] to cruel and unusual punishment of illegal detention, malicious arrest and depriving [him] due process of law"); *see id.* at 21 (alleging that Saunders was "subjected to a false arrest and false charges based off the banking defendant's false misrepresentation of the fact to the defendant police detective who filed the fabricated complaint and perjured affidavit of probable cause which causes [Saunders] to be illegally detained without a determination of probable cause and subjected [him] to be vindictively prosecuted without a determination of probable cause"); *id.* at 26 (alleging that BB&T and Adams "provided false misrepresentations to the Colonial Regional Police Department, fraudulent misrepresentations, that [were] false and misleading that resulted in a malicious arrest and prosecution without probable cause and for all the reasons set forth in this complaint").)  He also asserts that various errors and improprieties in the course of his criminal proceeding violated his rights.

    Specifically, Sanders alleges that when he walked into a branch of BB&T on January 28, 2019, he was arrested by Detective Munch "without any reasonable suspicion of probable cause and illegally searched and seizured [sic] . . . without a warrant."  (*Id.* at 5.)  Saunders alleges that BB&T "act[ed] in collusion and in concert" with Detective Munch who arrested Saunders based on BB&T's alleged "false misrepresentation."  (*Id.* at 3.)  Saunders then "immediately" appeared before Magisterial District Judge Englesson on the criminal charges supported by Munch's affidavit of probable cause.  (*Id.* at 5-6.)  He alleges that Judge Englesson failed to sign the

affidavit of probable cause, "illegally" detained him at the Northampton County Prison without making a probable cause determination as required by state criminal rules, set an "unconstitutional" bail, and scheduled an "illegal" preliminary hearing.  (*Id.*)  According to Saunders, District Attorney Morganelli and Assistant District Attorney Augustine conspired with the Magisterial District Judges assigned to the case and Saunders's court-appointed attorney to "vindictively prosecute" Saunders on behalf of BB&T, Northampton County, and the City of Easton, and to illegally detain him without probable cause, (*id.* at 8), as they "knew that [Sanders] did not do the crimes alleged in the criminal complaint report and affidavit of probable cause."  (*Id.* at 19.)

On February 11, 2019, Saunders appeared before Judge Capobianco for a preliminary hearing, which Saunders alleges was "unlawful" because of the foregoing failure to make a probable cause determination.  (*Id.* at 6-7.)  Attorney Andres, who was appointed from the Public Defender's Office to represent Saunders, suggested that Saunders plead guilty to the charges, and did not "advise [Saunders] that the issuing authority from the preliminary arraignment determined [there] was no probable cause and did not issue a warrant . . . ."  (*Id.* at 7.)  Saunders alleges that Judge Capobianco presented him with paperwork to waive his preliminary hearing, and that Andres "in concert, in cohorts, [and] in collusion" with Judge Capobianco induced Saunders to sign the waiver by representing that Saunders would receive a bail reduction or a hearing for a bail reduction.  (*Id*. at 7-8.)

Thereafter, Judge Capobianco transferred the case to the Northampton County Court of Common Pleas.  (*Id.* at 9.)  Andres never moved for a reduction in bail in accordance with his alleged representations, so Saunders moved for his removal.  (*Id*.)  Following a hearing before President Judge Michael Koury, Jr., who is not named as a Defendant in the instant matter,

Andres and the Public Defender's Office were removed from the case and Saunders was ordered to proceed pro se.  (*Id.* at 9-10.)  Saunders alleges that after he filed a pro se motion for a bail reduction hearing, an attorney not associated with the Public Defender, Mathew Deschler, who is not named as a Defendant in the instant matter, was assigned to represent him.  (*Id.* at 10.)  But, five days later, when Saunders was "called to video court for the bail reduction hearing" an attorney from the Public Defender's Office, Defendant Michael Light, had been assigned to represent him even though Saunders had not consented to the appointment.  (*Id.*)  Accordingly, Saunders alleges that Light acted fraudulently by representing to the court that he was Saunders's attorney.  (*Id.* a 10-11.)

Thereafter, Saunders moved to recuse Judge Koury, and Judge Sletvold was ultimately assigned to preside over Saunders's criminal proceeding.  (*Id.* at 11.)  Saunders represented to Deschler that he wanted to challenge the court's subject matter jurisdiction based on the alleged absence of probable cause; when Deschler refused, Saunders successfully moved for Deschler's removal.  (*Id.* at 11-12.)  Judge Sletvold apparently refused to appoint another attorney, asked Saunders questions about his medications in open court that he refused to answer, and denied Saunders's pro se motion challenging the court's subject matter jurisdiction.  (*Id.* at 12.)  It appears, however, that Deschler remained as standby counsel.

Now proceeding pro se, Mr. Saunders filed various motions in his criminal case, including a motion for discovery and a suppression motion seeking to suppress Munch's affidavit of probable cause and the evidence obtained upon his arrest.  (*Id.* at 13.)  He contends that Morganelli and Augustine failed to turn over discovery to him including the fraudulent loan application and camera footage from BB&T.  (*Id.*)  At a May 17, 2019 hearing on the suppression motion, Munch and Augustine allegedly conceded "contrary to the Affidavit of

Probable Cause" that false forms of identification were not found on Saunders's person at the time of his arrest. (*Id*. at 14.) Nevertheless, Judge Sletvold allegedly acted "in complete absence of all jurisdiction" by denying his suppression motion and failing to make factual findings and legal conclusions. (*Id.* at 14-15.) Judge Sletvold then continued pretrial proceedings following Augustine's request for a continuance "to look into the arrest evidence," i.e., the fraudulent identification bearing Baynes's name, which they ultimately found. (*Id.* at 15.) Deschler presented Saunders with copies of this "false evidence", to which Saunders responded by asking for the "arrest inventory receipt" to establish chain of custody. (*Id.*)

After discussions with Deschler, Saunders confirmed that he would proceed pro se and filed various motions, including to recuse Judge Sletvold and Deschler as standby counsel, and to compel the prosecutor to disclose the arrest inventory receipt. (*Id.* at 16.) Saunders alleges that Augustine refused to turn over those records and that Judge Sletvold did not rule on his motion. (*Id.*) Saunders again moved to suppress the evidence, which he contradictorily claims was illegally seized, false, and exculpatory. (*Id.* at 17.) Saunders alleges that Judge Sletvold "did not deny [his] motion to suppress" but that she then conspired with Defendant Karen Mengel, a court reporter, "by altering, changing and making omissions" to the transcript for the suppression hearing. (*Id.* at 17-18.)

Mr. Saunders alleges that he attempted to remove his criminal case to this Court, but that Defendant Fisher, Clerk of Court in Northampton County, forwarded Saunders's petition for removal to Judge Sletvold, rather than this Court. (*Id.* at 19-20.) Saunders alleges that Judge Sletvold denied his petition "in complete absence of all jurisdiction" by ruling on it, even though it was intended for the federal court. (*Id.* at 20.) Saunders alleges that he filed a second petition, which met with the same result. (*Id.*) A review of this Court's dockets reflects that Saunders's

notice of removal was, in fact, received in this Court, and that the case was summarily remanded

to the Court of Common Pleas the day after it was removed because Saunders had not alleged

proper grounds for removal to federal court. *See United States v. Saunders-El*, E.D. Pa. Crim. A.

No. 19-244 (ECF No. 2). His numerous requests for reconsideration of and/or relief from that

judgment were denied. *Id.* (ECF Nos. 13 & 15.)

      As noted above, Saunders was ultimately convicted. He alleges that, at trial, Munch and

his partner testified "that they did not observe [Saunders] commit any crimes." (ECF No. 1 at

21.) According to Saunders, Adams contradicted the statement she gave to Munch when she

testified that Saunders applied for the loan by phone. (*Id*.) He adds that he did not receive any

telephone records in pretrial discovery. (*Id.*)

      Saunders brings claims, pursuant to 42 U.S.C. § 1983, for violation of his First, Fourth,

Sixth, Eighth, and Fourteenth Amendment rights because he was subjected "to unlawful

commitment under criminal process without a determination of probable cause; thereby

subjecting [him] to cruel and unusual punishment of illegal detention, malicious arrest and

depriving [him] of due process of law." (ECF No. 1 at 3.) Saunders also cites 42 U.S.C. § 1985

and § 1986 as the basis for his claims.[7] (*Id.*) For relief, Saunders seeks a total of billions of

dollars in compensatory and punitive damages from the Defendants. (*Id.* at 23-25.) He also

seeks injunctive relief "in the form of [a] Writ of Habeas Corpus Relief" for his "immediate

release from judgment due to this illegal detention." (*Id.* at 25.)

---

[7] The Complaint also alludes to 42 U.S.C. §1981. (ECF No. 1 at 4.) Section § 1981 prohibits race discrimination in the making and enforcement of contracts; it has no apparent application to the facts alleged here. *See* 42 U.S.C. §1981. Accordingly, any claims under § 1981 are dismissed as lacking a legal basis.

The Court's records indicate that, at about the same time Saunders filed the instant civil action, he filed a Petition for a Writ of Habeas Corpus, which was assigned to the Honorable Cynthia M. Rufe and subsequently referred to the Honorable Richard A. Lloret for a Report and Recommendation. *See Saunders v. Ransom*, E.D. Pa. Civ. A. No. 20-4432 (ECF Nos. 1 & 3.)  In that Petition, Saunders challenges the criminal judgment in his Northampton County criminal proceeding based on many of the same allegations underlying his claims in the instant civil rights action.  Saunders subsequently filed a letter, which was docketed in both cases, asking the Court to consolidate his civil rights case and habeas case.  In that letter, Saunders also indicates that he wants to amend his civil rights complaint to include Superintendent Ransom as a defendant on the basis that the Superintendent is subjecting him to illegal detention.  (ECF No. 4 at 2.) Saunders subsequently filed a "Motion for Service and Process to be Processed by the U.S. Marshal Service Office of the Court" and a letter, both of which ask the Court to direct service of the Complaint by the U.S. Marshal Service.  (ECF Nos. 4 & 5.)

## II.     STANDARD OF REVIEW

Although Saunders has paid the fees to commence this civil action, the Court is still obligated to screen his Complaint pursuant to 28 U.S.C. § 1915A, which requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted."  *Id*. § 1915A(b)(1).  A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is

"based on an indisputably meritless legal theory," *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

To survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "[M]ere conclusory statements[] do not suffice." *Id.* The Court may also consider matters of public record in determining whether a complaint states a claim. *Buck*, 452 F.3d at 260. As Saunders is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.   DISCUSSION

### A.  Non-Cognizable Claims for Injunctive Relief

Mr. Saunders seeks immediate release from imprisonment based on allegations that his wrongful detention, prosecution, conviction and incarceration violated his rights. However, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Accordingly, Saunders's request for a writ of habeas corpus is not cognizable in this civil rights action and will be dismissed without prejudice to Saunders pursuing his challenges to his convictions in his pending habeas proceeding. For the same reason, Saunders's letter request to join this civil rights action with his habeas case, and his request to amend his Complaint to add a claim for injunctive relief against Superintendent Ransom will be denied. (*See* ECF No. 3.)

### B.  Damages Claims Barred by *Heck*

Many of Saunders's damages claims are not cognizable in a civil rights action.  "[T]o recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote and citation omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)).  That principle has been applied to preclude claims under § 1985 and § 1986 where success on the claims would necessarily imply the invalidity of an intact conviction.  *Zhai v. Cedar Grove Municipality*, 183 F. App'x 253, 255 (3d Cir. 2006) (per curiam) (civil rights claims under § 1985 and § 1986 were barred by *Heck*); *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1098 n.4 (9th Cir. 2004) ("We agree with our sister circuits that *Heck* applies equally to claims brought under §§ 1983, 1985 and 1986.").

Saunders's Complaint asserts that numerous constitutional violations occurred during his prosecution.  Primarily, he alleges that his prosecution and related detention were unsupported by probable cause because Detective Munch's affidavit supporting the criminal complaint was based on falsehoods relayed by Adams in her capacity as a BB&T bank manager.  These claims are best understood as Fourth Amendment malicious prosecution claims.  *See Manuel v. City of*

*Joliet, Ill.*, 137 S. Ct. 911, 919 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.").  Liberally construing the Complaint, Saunders may also be attempting to bring fabricated evidence claims arising under the Fourteenth Amendment by claiming that he was prosecuted and detained based on false evidence.  *See generally Black v. Montgomery Cty.*, 835 F.3d 358, 371 (3d Cir. 2016) (acknowledging existence of fabricated evidence claim under the Fourteenth Amendment).   Saunders also appears to be claiming that his prosecution was constitutionally invalid due to ineffective assistance of counsel and the withholding of exculpatory evidence.

As Mr. Saunders's convictions have not been reversed, vacated, or otherwise invalidated, he may not pursue his damages claims for unconstitutional prosecution, conviction, and related imprisonment because success on those claims would necessarily imply the invalidity of his intact convictions.[8]  *See McDonough v. Smith*, 139 S. Ct. 2149, 2158 (2019) (a plaintiff may not bring a "fabricated-evidence challenge to criminal proceedings" until the proceeding ends in the defendant's favor or a resulting conviction is invalidated); *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) ("*Brady* claims have ranked within the traditional core of habeas corpus and outside the province of § 1983."); *Nash v. Kenney*, 784 F. App'x 54, 57 (3d Cir. 2019) (per curiam) ("Nash's malicious-prosecution and speedy-trial claims — which challenge his post-arraignment detainment — are barred by the favorable-termination rule of [*Heck*]."); *Thomas v. Jones*, 428 F. App'x 122, 123 (3d Cir. 2011) (per curiam) ("[I]nsofar as Thomas seeks damages for his counsel's alleged ineffectiveness, his claim is barred by *Heck*.").   Saunders's claims based on

---

[8] These claims fail for alternative reasons as well, which the Court will discuss in more detail below.

alleged errors in the transcript for his suppression hearing are also barred by *Heck* because a constitutional claim would only be plausible if errors in the transcript adversely affected the outcome of Saunders's criminal proceeding, and success on such a claim would necessarily imply the invalidity of his convictions.  *See Tedford v. Hepting*, 990 F.2d 745, 749-50 (3d Cir. 1993) (due process claim for damages against court reporters, among others, for allegedly tampering with transcript was not cognizable in a § 1983 action "absent a successful challenge to the underlying conviction"); *Ladyman v. Meade*, Civ. A. No. 14-2038, 2018 WL 3972258, at *2 (N.D. Ind. Aug. 20, 2018) (rejecting constitutional claim based on errors in transcript of suppression hearing where plaintiff "[made] no claim, much less a showing, that the transcript prepared by Drust adversely affected the outcome of the suppression hearing, much less the larger prosecution"); *Shahin v. Darling*, 606 F. Supp. 2d 525, 543 (D. Del. 2009) ("[A] plaintiff does not have a constitutional right to an error free transcript."), *aff'd*, 350 F. App'x 605 (3d Cir. 2009).  To the extent *Heck* does not bar Saunders's claims, or its application is unclear at this time, the claims are discussed below.

### C.  False Arrest and Related Fourth Amendment Claims

In addition to challenging his prosecution, Saunders challenges his arrest by Detective Munch based on Adams's and BB&T's representations, and his related detention.[9]  To state a claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause.  *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995).  "[P]robable cause to arrest exists when the facts

---

[9] To the extent Saunders is also bringing claims against Munch based on his testimony at court hearings or at trial, which is unclear, Munch is entitled to absolute witness immunity from those claims.  *See Rehberg v. Paulk*, 566 U.S. 356, 369 (2012); *Williams v. Hepting*, 844 F.2d 138, 141 (3d Cir. 1988); *Briscoe v. LaHue*, 460 U.S. 325, 329-30 (1983).

and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  *Id.* at 483.  "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'"  *Harvard v. Cesnalis*, --- F.3d ---, No. 20-1012, 2020 WL 5200679, at *4 (3d Cir. Sept. 1, 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)).  "A claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more."  *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998); *see also Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges.").

The specific factual basis for Saunders's false arrest claim is unclear.  Although he repeatedly alleges that his arrest was unlawful and based on falsehoods, it is difficult to discern from the Complaint what specific falsehoods Saunders alleges.  That is in part because Saunders's allegations about his arrest are heavily entangled with his allegations about the prosecution and because his allegations are at times disjointed and internally inconsistent.  In other words, it is not clear what facts support Saunders's allegations that Detective Munch arrested him without a reasonable basis for believing that he committed any of the crimes for which he was arrested.  It is also unclear whether Saunders is alleging that he did not commit the challenged crimes at all, or whether he is claiming that only certain aspects of the statements Adams and BB&T made to Detective Munch are untrue.  Rather than guess at the basis for this

claim, the Court will dismiss the claim as pled, with leave to amend.[10]  *See Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (per curiam) (explaining that, to the extent plaintiff was asserting claims for false arrest and imprisonment, "[plaintiff] needed to point to facts suggesting that Defendant Thompson lacked probable cause to believe he had committed the offense for which he was arrested").  Saunders should note that he may only pursue damages on this claim for his detention from the time of his arrest until his arraignment before Judge Englesson the same day.  Saunders's related claims for unlawful searches and seizures, which are also not clearly pled and premised on conclusory allegations, are also not plausible at this time, since it is lawful for an arresting officer to perform a search incident to an arrest and Saunders has not clearly alleged his arrest was unlawful.  *See generally Birchfield v. North Dakota*, 136 S. Ct. 2160, 2174-76 (2016) (discussing the search-incident-to-arrest doctrine).

### D.  Conspiracy Claims

Saunders asserts conspiracy claims under § 1983 and § 1985,[11] as well as a related claim under § 1986, all of which fail because he has not adequately alleged a conspiracy.  "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010).  "[A] bare assertion of conspiracy will not suffice."  *Bell*

---

[10] Saunders's false arrest and related false imprisonment claims are not categorically barred by *Heck*, although there are circumstances in which *Heck* could bar such claims.  *See Olick v. Pennsylvania*, 739 F. App'x 722, 726 (3d Cir. 2018) (per curiam) (explaining that *Heck* "does not automatically bar" claims for false arrest and false imprisonment but "there are circumstances in which *Heck* may bar such claims").  As a result of the ambiguity in Saunders's claims, it is also difficult for the Court to determine whether they are *Heck*-barred.

[11] Section 1985(1), which concerns conspiracies to prevent an officer from performing duties, and § 1985(2), which "prohibits conspiracies to retaliate against parties or witnesses in any United States Court," *Kane v. Chester Cty.*, 811 F. App'x 65, 71 (3d Cir. 2020), have no relevance here, so the Court will analyze Saunders's claims under § 1985(3).

*Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "'A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and substance of which are not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions.'"  *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 185 (3d Cir. 2009) (per curiam) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990)).

"[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States."  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"). "[Section] 1986 constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985, and 'transgressions of § 1986 by definition depend on a preexisting violation of § 1985." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)).  In other words, "to maintain a cause of action under § 1986, the plaintiffs must show the existence of a § 1985 conspiracy."  *Id.* at 1295 n.5

Although Saunders alleges in a conclusory fashion throughout his Complaint that the Defendants conspired against him and acted in concert, he has not alleged facts supporting those allegations.  He has not alleged with any specificity the contours of an illegal agreement against him by identifying the specific parties to the agreement, the object of the agreement, or when this

agreement was made.  Accordingly, he has not alleged a plausible basis for a conspiracy.  *See Great W. Mining & Mineral Co.*, 615 F.3d at 179 (no conspiracy claim where plaintiff "failed to allege except in general terms the approximate time when the agreement was made, the specific parties to the agreement (i.e., which judges), the period of the conspiracy, or the object of the conspiracy").  Saunders has also failed to plausibly allege that any claimed conspiracy was based on his race or membership in a class, which is another reason his § 1985 and § 1986 claims fail.

### E.  Claims Against Judges Englesson, Capobianco and Sletvold

Saunders is suing Judges Englesson, Capobianco and Sletvold in their individual and official capacities.  Official capacity claims against a defendant are indistinguishable from claims against the entity that employs the defendant.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)).  In other words, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*

Saunders's claims Judges Englesson, Capobianco and Sletvold in their official capacities are essentially claims against the Northampton County Court of Common Pleas.  However, the Northampton County Court of Common Pleas is not a "person" subject to liability under § 1983 and, in any event, is entitled to Eleventh Amendment immunity from Saunders's claims.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989); *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005); *see also* 42 Pa. Cons. Stat. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United

States."). Accordingly, the Court will dismiss Saunders's claims against the Judges in their official capacities as legally baseless.

Saunders's claims against these Judges in their individual capacities fare no better. Judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

All of Saunders's allegations against Judges Englesson, Capobianco and Sletvold are based on how they adjudicated motions and conducted hearings and proceedings in his criminal case, all of which are judicial acts. Although Saunders alleges in a conclusory fashion that these Defendants acted in the absence of jurisdiction, apparently because they permitted the proceeding to continue without probable cause, that allegation does not vitiate immunity.[12] *See, e.g.*, *Elansari v. Ruest*, 796 F. App'x 763, 764 (3d Cir. 2020) (per curiam) ("[Plaintiff's] conclusory allegation that Judge Ruest used 'outside-of-the-courtroom procedural tactics to deprive [him] of a fair opportunity to challenge' his conviction, does not defeat [judicial] immunity" (citation omitted)); *Kinnard v. George*, 652 F. App'x 96, 98 (3d Cir. 2016) (per curiam) ("Given that Kinnard complains of judicial actions that Judges Carr and George took in

---

[12] The Court understands Saunders also to be raising a claim against Judge Sletvold based on the removal petition. In addition to Judge Sletvold enjoying absolute immunity on this claim, it is also implausible as discussed below.

the course of an official criminal proceeding, Judges Carr and George are protected by absolute

judicial immunity"); *Dellenbach v. Letsinger*, 889 F.2d 755, 761 (7th Cir. 1989) ("[J]udicial acts

concerning the preparation and ultimate transfer of papers and transcripts to the appellate court

qualify as judicial acts for which the grant of absolute immunity is functionally appropriate.");

*Breese v. Kurtz*, Civ. A. No. 17-1678, 2017 WL 7685951, at *5 (M.D. Pa. Dec. 8, 2017)

("[J]udicial immunity specifically applies to judicial actions ruling on bail requests, making

probable cause determinations, and presiding over preliminary hearings in state criminal

cases."), *report and recommendation adopted*,  2018 WL 836724 (M.D. Pa. Feb. 13, 2018).

### F.   Claims against Morganelli, Augustine, Northampton County and City of Easton

Saunders's claims against Morganelli and Augustine are essentially based on their

prosecution of the charges against him, and his claims against Northampton County and the City

of Easton appear to be predicated solely on Morganelli and Augustine's conduct.

Saunders's claims against Morganelli and Augustine in their individual capacities are

barred by absolute prosecutorial immunity.  Prosecutors are entitled to absolute immunity from

liability under § 1983 for acts that are "intimately associated with the judicial phase of the

criminal process" such as "initiating a prosecution and . . . presenting the State's case."  *Imbler v.

Pachtman*, 424 U.S. 409, 430-31 (1976).  "[W]hether a prosecutor is entitled to absolute

immunity depends on whether she establishes that she was functioning as the state's 'advocate'

while engaging in the alleged conduct that gives rise to the constitutional violation."  *Yarris v.

Cty. of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006).  Moreover, District Attorneys and other

supervisory prosecutors are likewise entitled to absolute immunity from claims based on their

role in pursuing a prosecution on behalf of the Commonwealth.  *See Van de Kamp v. Goldstein*,

555 U.S. 335, 348-49 (2009).

Saunders alleges that Augustine and Morganelli prosecuted the Commonwealth's case against him despite the alleged deficiencies in evidence and lack of probable cause, withheld exculpatory evidence, presented false evidence to the court, and falsified evidence when Augustine procured items seized upon Saunders's arrest in the wake of the suppression hearing. Augustine and Morganelli are entitled to absolute prosecutorial immunity from these claims.[13] *See Fogle v. Sokol*, 957 F.3d 148, 164 (3d Cir. 2020) (prosecutors were entitled to immunity from claims based on allegations "that at hearings and at trial the Prosecutors withheld material exculpatory evidence from defense counsel, the court, and the jury; filed a criminal complaint without probable cause; and committed perjury before and during trial"); *Yarris*, 465 F.3d at 139 (prosecutors were entitled to absolute immunity from claims that they procured a false statement from a jailhouse informant when they did so after plaintiff had been charged and, thus, were acting as the State's advocate).

Saunders's claims against Morganelli and Augustine in their official capacities and his claims against Northampton County and the City of Easton are one and the same. *See Graham*, 473 U.S. at 165-66. To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). Here, Saunders has not tied any of

---

[13] In one sentence of the Complaint, Saunders alleges that Augustine "refuses to return [his] personal property," apparently $532 that was seized during his arrest. (ECF No. 1 at 18.) There is no other discussion of this allegation and Saunders does not appear to be seeking any relief related to it. If Saunders intended to pursue a claim based on this allegation, it is not apparent to the Court.

the alleged violations of his rights to a municipal policy or custom.  Accordingly, his § 1983

claims against these municipal entities fail.

### G.  Claims Against Non-State Actor Defendants

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

Whether a defendant is acting under color of state law — i.e., whether the defendant is a state

actor — depends on whether there is "such a close nexus between the State and the challenged

action that seemingly private behavior may be fairly treated as that of the State itself."  *Leshko v.*

*Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted).  "To answer that question,

[the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to

determine whether state action exists:  (1) whether the private entity has exercised powers that

are traditionally the exclusive prerogative of the state; (2) whether the private party has acted

with the help of or in concert with state officials; and (3) whether the state has so far insinuated

itself into a position of interdependence with the acting party that it must be recognized as a joint

participant in the challenged activity."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal

quotations and alteration omitted).

"Complaining in person to the police or filing a civilian criminal complaint are not acts of

the State; they are acts that anyone can do.  Filing a report or a civilian complaint does not

transform a private citizen into a State actor."  *Sous v. Timpone*, Civ. A. No. 15-7972, 2016 WL

2625325, at *4 (D.N.J. May 9, 2016) (citing *Boyce v. Eggers*, 513 F. Supp. 2d 139, 144-45

(D.N.J. 2007)).  Accordingly, Adams and BB&T's reporting of Saunders's conduct and

participation in the related police investigation does not render them state actors for purposes of

§ 1983. *See Baack v. Rodgers*, Civ. A. No. 14-875, 2014 WL 4632380, at *1, 3 (E.D. Pa. Sept. 17, 2014) (rejecting § 1983 false arrest claim against a hospital and two of its employees who filed a police report regarding plaintiff's conduct because "reporting suspicious conduct to the police — or answering police questions about that conduct — without more, does not transform the Hospital Defendants into state actors" (citations omitted)); *Collins v. Christie*, Civ. A. No. 06-4702, 2007 WL 2407105, at *4 (E.D. Pa. Aug. 22, 2007) ("[E]ven if Dr. Columbo intentionally provided the false information to the police, the plaintiff would still fail to state a claim under § 1983."); *O'Neil v. Beck*, Civ. A. No. 04-2825, 2005 WL 2030319, at *2 (M.D. Pa. Aug. 4, 2005) (concluding that allegations that a private citizen filed a false police report and wanted to see the plaintiff arrested are "simply insufficient" to establish that the private citizen is a state actor for purposes of a claim brought pursuant to § 1983).

Saunders's claims against Andres and Light, attorneys appointed to represent him at times in the course of his criminal proceeding, similarly fail because those Defendants are not state actors. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." (footnote omitted)); *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."). Although individuals who are not state actors may be considered state actors if they act in concert with state officials, Saunders's conclusory and unsupported allegations of conspiracy among the Defendants, *see supra* § III.D., are insufficient to support a plausible conclusion that BB&T, Adams, Andres and Light are state actors for purposes of § 1983. *See, e.g., Pittman v. Martin*,

569 F. App'x 89, 91-92 (3d Cir. 2014) (per curiam) (explaining that "conclusory allegations of conspiracy" were insufficient to justify treating public defenders as state actors).

### H.  Claims Based on the Notice of Removal

The Court understands Saunders to be raising a claim against Judge Sletvold and Clerk of Court Fisher that he was denied access to the courts based on his allegation that they improperly handled his notice of removal, which he claims was addressed to the federal court.[14]  The right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  Accordingly, to state a claim for denial of access to the courts, a plaintiff must plausibly allege the loss of a nonfrivolous, arguable claim.  *Id.*  Here, Saunders's notice of removal was received by the federal court and immediately rejected, as were his subsequent requests to the federal court to reconsider its ruling.  It is therefore apparent that any alleged mishandling of the notice of removal in state court did not prejudice Saunders because his case was not eligible for removal.

### IV.    CONCLUSION

For the foregoing reasons, Saunders's Complaint will be dismissed with prejudice as legally frivolous and for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).  Saunders's claims for injunctive relief are dismissed without prejudice to him proceeding in his pending habeas case, *see Saunders v. Ransom*, E.D. Pa. Civ. A. No. 20-4432, and his request to join this case with his habeas case is denied.  The following claims are dismissed with prejudice because Saunders cannot cure the defects the Court has identified in them:  (1) claims against Judges Englesson, Capobianco, and Sletvold in their individual and official capacities; (2) claims against

---

[14] This is the only claim Saunders raises against Fisher.

Morganelli and Augustine in their individual capacities; and (3) the claim against Clerk of Court Fisher.  Saunders is granted leave to file an amended complaint limited to his false arrest claims against Detective Munch, Adams, and BB&T, and any conspiracy claims related to his false arrest claims.  All remaining claims are dismissed without prejudice to reassertion in a new civil action only in the event Saunders's convictions are reversed, vacated, or otherwise invalidated. *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016).

To the extent Saunders requests pro bono counsel in his Complaint, his request is denied. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim").   Saunders's "Motion for Service and Process to be Processed by the U.S. Marshal Service Office of the Court" is denied without prejudice at this time due to the dismissal of his claims.  An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

**/s/ Gerald Austin McHugh**

_____

**GERALD A. McHUGH, J.**

26